**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jamie Gallagher,** | ) | **CASE NO. 1: 12 CV 285** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Zircoa, Inc.,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

In this case plaintiff alleges claims for breach of a collective bargaining agreement, retaliation, and gender discrimination. Pending before the Court are defendants' motions for summary judgment: Defendant Zircoa, Inc.'s Motion for Summary Judgment (Doc. 30) and Defendant United Steelworkers of America, Local 1033T's Motion for Summary Judgment. (Doc. 29.) For the reasons stated below, both motions are granted.

**Facts**

Defendant Zircoa, Inc. ("Zircoa") is engaged in the manufacture of specialty ceramic parts for the steel and aerospace industry. Zircoa has a facility in Solon, Ohio that employs approximately 70 hourly plant and 30 salaried employees. The hourly plant employees are represented by the United Steelworkers of America, Local 1033T (the union), which is a party to a collective bargaining agreement (CBA) with Zircoa. The CBA governs the terms of employment for bargaining unit employees such as plaintiff, including their discipline.

Plaintiff Jamie Gallagher was hired by Zircoa in 2005 and worked at Zircoa's Solon, Ohio facility until she was discharged from her employment on March 15, 2011.

1

The circumstances preceding plaintiff's termination are as follows. On March 8, 2011,[1] when plaintiff reported to work for her (night) shift, she was assigned to work the alpha press. When she finished a work order, the press needed to be changed to make different parts. Plaintiff proceeded to run a different backup press, a hydromat press. After discovering that the hydromat press was not properly working, plaintiff went back to the alpha press and asked the person setting up the press, Jay Peoples, what she should do. At this point, her supervisor, Vince Liotta, came up behind her and told her that she should run the digital press. Plaintiff testified that she "kind of shook her head" when Liotta told her this and said, "okay." But despite Liotta's instruction, plaintiff proceeded to continue to run the hydromat press. Plaintiff testified that she considered Liotta's instruction to be merely an option. Liotta, however, approached plaintiff later. When he discovered that she was still running the hydromat press despite his instruction for her to run the digital press, Liotta told her that if she didn't run the digital press he was going to write her up for insubordination. At this point, plaintiff asked Liotta why she needed to run the digital press when she already had another press started. Liotta did not respond to this question but repeated his instruction for plaintiff to run the digital press. (Pltf. Dep. at 39-40.)

Plaintiff shut down the hydromat press and, upset, went over to speak with her co-worker, Peoples. She told Peoples that she was upset because she was going to be written up for insubordination when she hadn't done anything wrong. Peoples told her to calm down, to go outside and smoke a cigarette, and then come back in and "go to the digital" press. Plaintiff

---

[1] It appears there is some evidence that the shift in question began on the evening of March 7, 2011 rather than on March 8, 2011, but the exact date (whether March 7th or March 8th) is not material to or dispositive of any issue presented here.

testified that this is exactly what she did.  (Pltf. Dep. at 40.)  When she returned from going outside, she ran the digital press until she was out of material and then she cleaned up for the rest of the night.

Before plaintiff left to go home that night, she sent a text message to Ed Ulatowski, another co-worker, that stated:

> Ur either gona back me up or leave t dry but im taking vince in the office in the morning and telling them how he asked me if I wanted him and made kissy faces at me and touched my eyebrow ring for no reason them im gona talk about how he told us to slow down on our work this is a true friendship test u leave me out t dry and I will act like u don't exist the rest of my life.

(Def. Ex. 8., Pltf. Dep. at 51.)

In addition, before leaving work that night, plaintiff spoke with Dave Emmanual, a day supervisor at Zircoa.  (Pltf. Dep. at 56.)  According to plaintiff, she asked Emmanual if the company had a problem with her or if she was being watched because Liotta was giving her a hard time and was not treating other employees in the same way.  Emmanual told plaintiff he was not aware that she was being watched and that he would talk to Liotta.  (Pltf. Dep. at 56-57.)

Finally, plaintiff spoke with fellow union-member Tatia Carrington in the locker room before she left that evening.  (*Id.*)  Plaintiff asked Carrington for advice on what she would do if she felt she was being harassed by a supervisor.

After this conversation, plaintiff left work without speaking with anyone else.

The next evening when plaintiff reported to work for her shift, she was informed by the union president Eric Nelson that she needed to report to a meeting in Zircoa's office.[2]  Plaintiff,

---

[2] As discussed below, plaintiff, Zircoa, and the union were involved in several meetings regarding plaintiff's conduct on March 8th.  There are some differences in regards to different people's accounts of the number of meetings held and the people who

3

Nelson, plant manager Jason Haffner, and personnel supervisor Karen Altabas were in attendance. Altabas asked plaintiff if she knew why she had been called into the office, to which plaintiff responded that she presumed the meeting was about Liotta and "the way he [had] been riding [her] case." Plaintiff then reported that Liotta had allegedly touched her eyebrow for no reason and had made "kissy faces" at her. Altabas informed her that she was actually called into the office because Liotta had written her up for insubordination the previous evening. Plaintiff was told to leave the premises pending an investigation into the situation. (Pltf. Dep. at 62.)

A second meeting was held approximately a week later. Plaintiff, Altabas, Nelson, Haffner, Liotta, and chief union steward Bill Roupe attended this meeting. Plaintiff was informed that an investigation into her allegations had been completed and that her allegations were not found to be substantiated. (Pltf. Dep. at 63.) Haffner submits a declaration stating that Zircoa interviewed all of the employees on plaintiff's shift and that no one verified her claims. (Haffner Decl., ¶ 6.)

A third meeting was subsequently held and attended by plaintiff, Altabas, Nelson, Roupe, Tom Zidek (representing the International union), Jyoti Chakraverty, Tracy Simmons (personnel), and Ron Carrington (Vice President of the union). (Pltf. Dep. 67.) Altabas informed plaintiff at this meeting that Zircoa was terminating her for insubordination and for violating her "work agreement."

The work agreement to which Altabas referred was an agreement plaintiff previously signed in connection with prior discipline she had received at Zircoa. Prior to the March 8, 2011

---

were present at each meeting, but these differences are not material to the pending motions. The following summary is derived from the plaintiff's deposition testimony.

4

incident, plaintiff had previously been disciplined by Zircoa for attendance issues.  In addition, in 2008, plaintiff was suspended for leaving work without clocking out, meaning that she received pay for time she did not work.  Plaintiff knew this conduct violated a work rule.  Although the customary penalty for such an infraction was automatic termination, the union negotiated for plaintiff to return to work at Zircoa after this violation pursuant to the terms of a "Return to Work Agreement."  The return to work agreement provided:

> 1.  Jamie understands that she must meet all established standards of conduct, attendance and job performance.
>
> 2.  Jamie understands that her job performance must improve and that her attendance continues to be good.
>
> 2. [sic] Jamie understands that any violation of company work rules or substandard job performance will result in immediate termination.
>
> 3.  Jamie understands that she will be subject to the stated rules and conditions for her entire employment time at Zircoa.

(Def. Ex. 7.)  Plaintiff signed this agreement and acknowledged:

> I understand and agree that my continued employment is contingent upon my meeting all of the above rules and conditions of employment.  Additionally, I understand and agree that my failure to do so relinquishes all defense[s] on my part and subjects me to immediate termination of my employment with this company.

(*Id*.)

After signing the return to work agreement, plaintiff received additional discipline for attendance issues.  She received a written warning for attendance on September 23, 2010.  In addition, she received an attendance violation on March 4, 2011 for leaving work early without notifying her supervisor.

The union also submits evidence that it investigated the March 8, 2011 situation by

5

interviewing plaintiff's co-workers about the incident. Based on its investigation, the union concluded that plaintiff reacted insubordinately to Liotta's instructions. Fellow union employees of plaintiff's reported to the union that plaintiff had been screaming at Liotta and took an unauthorized break. Although the union "tried to defend" plaintiff in the meetings with Zircoa following the incident, ultimately, the union decided not to pursue contractual and extra-contractual remedies on plaintiff's behalf because of the union's assessment of the weaknesses in plaintiff's case and the clear terms of plaintiff's return to work agreement. The union determined that plaintiff's return to work agreement would be fatal to any case it brought on plaintiff's behalf because her return to work agreement clearly stated that "any violation of company work rules or substandard job performance will result in immediate termination." After the final meeting with Zircoa in which Zircoa made a final decision to terminate plaintiff, the union informed plaintiff that it would not pursue further action challenging her discharge on her behalf but would assist her in obtaining unemployment compensation.

Plaintiff's amended complaint alleges three counts against Zircoa and the union. Count I alleges that the union and Zircoa breached the CBA. Plaintiff alleges that Zircoa breached the CBA by failing to protect plaintiff from sexual harassment and by wrongfully terminated her. Plaintiff alleges that the union failed to represent her pursuant to the terms of the CBA. Count II alleges that Zircoa terminated plaintiff in retaliation for complaining about sexual harassment. Count III alleges that the defendants discriminated against her because of her gender in violation of Ohio Rev. Code Section 4112.99.

**Standard of Review**

Federal Rule of Civil Procedure 56 governing summary judgment provides that "[t]he

court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986). In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

**Discussion**

*Count 1- Breach of CBA*

When a union member files claims alleging breach of a CBA by her employer and breach of the duty of fair representation by her union, the action is known as a hybrid action under Section 301 of the Labor Management Relations Act. *See* 29 U.S.C. § 185 (governing "[s]uits

7

for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce"); *Black v. Ryder/PI.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994). The employee's claims against the employer and the union "are inextricably interdependent." *Id.,* citing *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164. That is, "to recover against either the Company or the Union, [the plaintiff] must show that the Company breached the [Collective Bargaining] Agreement and that the Union breached its duty of fair representation." *Black*, 15 F.3d at 583, citing *Bagsby v. Lewis Bros.,* 820 F.2d 799, 801 (6th Cir.1987). Unless the plaintiff demonstrates both violations, the plaintiff cannot succeed against either party. *White v. Anchor Motor Freight, Inc*., 899 F.2d 555, 560 (6th Cir. 1990).

The union and Zircoa both move for summary judgment on count I, arguing that the plaintiff cannot establish either that the union breached its duty of fair representation to her or that Zircoa breached the CBA. They argue that the plaintiff cannot establish that Zircoa breached the terms of the CBA because the CBA affords Zircoa the right to "enforce factory rules" (by imposing the penalties of suspension or discharge), including Zircoa's factory rules prohibiting: "insubordination, inefficiency or incompetency"; "fighting, using abusive or threatening language on Company property"; and "excessive lateness and absenteeism." (Union Mem. at 11-12.) Plaintiff's return to work agreement further supplemented the CBA and allowed Zircoa to terminate her upon "any violation of company work rules or substandard job performance." (*Id*.) Accordingly, defendants contend that Zircoa's conduct in terminating plaintiff was justified under the terms of the CBA. As the union explains:

> The Company could have terminated Plaintiff when she continued to violate its attendance policies, and it was more than justified in doing so when she refused to follow and then delayed in following a supervisor's direct instructions, and where all evidence indicated that Plaintiff reacted to those instructions insubordinately.

8

> Pursuant to Plaintiff's [return to work agreement] and the language of the [CBA], Plaintiff's violation of the attendance policies and her conduct in response to a supervisor's order gave the Company the right to terminate Plaintiff's employment.

(Union Mem. at 13.)

Defendants also argue that the plaintiff cannot establish that the union breached its duty of fair representation to the plaintiff. A union breaches its duty of fair representation "only when a union's conduct toward a member . . . is arbitrary, discriminatory or in bad faith." *Vaco v. Sipes*, 386 U.S. 171, 190 (1967). A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citation omitted). In order to demonstrate discriminatory conduct, a plaintiff must "adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of Street Elec. Ry. v. Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301 (1971). Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct and occurs when a union acts with an "improper intent, purpose, or motive." *Spellacy v. Airline Pilots Ass'n*, 156 F.3d 120, 126 (2d Cir. 1998). In contrast, a union's reasonable decision made after a thorough investigation to refrain from pursuing a grievance on a union member's behalf does not constitute a breach of the union's duty of fair representation. *See Driver v. U.S. Postal Serv.*, 328 F.3d 863, 869 (6th Cir. 2009). *See also Summers v. Keebler Co.*, 133 Fed. App'x 249, 253-54 (6th Cir. 2005) (holding that union did not breach its duty of fair representation in failing to pursue a grievance on behalf of a member who violated the term a "last chance agreement" that specifically stated that a violation would result in termination).

9

Defendants argue that the plaintiff cannot establish that the union breached its duty of fair representation to plaintiff here because the undisputed evidence shows that the union reasonably determined after investigating plaintiff's situation that plaintiff's potential grievance lacked merit.  The union explains:

> Here, the Union mounted a thorough investigation into the merits of Plaintiff's discipline and the strength of her overall case.  Plaintiff worked with a small group of employees, and the Union spoke to every employee who had been on her shift.  (Roupe Dec. ¶33).  Those employees confirmed that, at the very least, Plaintiff had been screaming during her shift, in reaction to a direct order from her supervisor.  In addition, she delayed complying with her supervisor's order by taking an unscheduled break.  (Roupe Dec. ¶¶34-35) . . . .  Beyond the circumstances of the instant discipline, the Union reviewed Plaintiff's work history, the egregious rule violation that led to her [return to work agreement], and her long history of attendance problems.  (Zidek Dec. ¶¶10-14).
>
> Given this evidence and Plaintiff's [return to work agreement], [the union] made the decision not to seek a court order compelling the Company's participation in the grievance process.  [The union] determined that, under all of the circumstances, Plaintiff's potential grievance lacked sufficient merit to warrant arbitration. . . . [The Union] concluded that [Zircoa] could likely persuade an arbitrator that the Company had cause to terminate Plaintiff, under the CBA and under her [return to work agreement].  This judgment was informed and rational.

(Union Mem. at 16.)  In addition, the union points out that it defended plaintiff and advocated on her behalf in the various meetings held with Zircoa before Zircoa made its final decision to terminate her despite the fact that plaintiff violated her return to work agreement.  The union asserts that plaintiff "can point to no aspect of the Union's conduct that was discriminatory, arbitrary or in bad faith."  (Union Mem. at 19.)

The only evidence plaintiff relies on in her opposition briefs to demonstrate that the union breached its duty of fair representation to her are statements she makes in an affidavit that she "sought remedy for [her] wrongful discharge pursuant to the CBA through the Union" and that the union told her on March 6, 2011, and again on April 6, 2011, that the union would

10

handle her grievance but did not do so. (*See* Pltf. Aff. ¶ 6.)[3]  Plaintiff does not explain how or cite authority indicating that such statements by a union are sufficient by themselves to show arbitrary, discriminatory, or bad faith conduct.  Even assuming that plaintiff's statements are true (and that some unidentified person at the union told plaintiff at various times that the union would file a grievance on her behalf), the undisputed evidence before the Court is that the union ultimately decided not to pursue such a grievance in light of the union's findings that plaintiff acted insubordinately toward Liotta after the union thoroughly investigated the March 8, 2011 incident and otherwise evaluated and considered plaintiff's employment situation (in which plaintiff was disciplined for further attendance violations after signing a return to work agreement clearly stating that she would be terminated for a further violation of company rules). Plaintiff's statements in her affidavit that she was told that the union would file a grievance on her behalf are insufficient for a reasonable jury to find that the union's ultimate decision not to pursue a grievance on her behalf was "arbitrary," "discriminatory," or in "bad faith."  Because plaintiff has not come forward with evidence sufficient to show that the union acted in such a manner, plaintiff cannot make out a claim against the union for breach of the duty of fair representation.  Accordingly, plaintiff's claim for breach of CBA alleged in count I of plaintiff's amended complaint fails as a matter of law.  *See White v. Anchor Motor Freight, Inc*., 899 F.2d at 559-60.         Plaintiff also does not point to sufficient evidence on summary judgment to demonstrate that Zircoa breached the CBA.  Plaintiff does not argue in her opposition briefs that Zircoa breached the CBA by wrongfully terminating her (as she alleged in her complaint).  She

---

[3] Plaintiff does not dispute the union's assertion and evidence demonstrating that it investigated the March 8, 2011 incident and rationally evaluated the merits and likely success of a potential grievance in light of plaintiff's employment record.

does not dispute in her opposition brief the union's assertions that Zircoa was justified in terminating her under the terms of the CBA and the return to work agreement. Instead, plaintiff argues that Zircoa breached the CBA solely because she was subjected to sexual harassment by her supervisor, Liotta. Plaintiff asserts that she "was subjected to harassment . . . which constituted a breach of the CBA." (Pltf. Opp. at 6.) Plaintiff, however, has not come forward with sufficient evidence on summary judgment to demonstrate a genuine issue or claim on this point.

> Plaintiff entire argument is as follows:
>
> In the instant case, Plaintiff was subjected to harassment by Defendant Zircoa which constituted a breach of the CBA. Plaintiff was touched inappropriately and sexually harassed by her male supervisor Vince Liotta. (*See* Plaintiff's Affidavit). On March 6, 2011 Plaintiff complained about the harassment to Defendant Zircoa. *Id.* In retaliation Plaintiff was suspended on March 8, 2011 and terminated on March 15, 2011 by Defendant. *Id*. Plaintiff is female and is a member of a protected class, was subjected to unwelcome harassment based on sex, she was suspended and terminated because she complained about said harassment and the Defendant Zircoa is required by the CBA and its own work policies to protect Plaintiff and is therefore liable for her damages. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009).

(Pltf. Opp. to Zir. Mot. at 4.)

Although plaintiff does not identify the specific provision or provisions of the CBA and/or Zircoa's work policies that require Zircoa "to protect" plaintiff from harassment, Zircoa acknowledges that it maintains a sexual harassment policy. This policy instructs employees to report to Zircoa sexual or unlawful harassment experienced at work and provides that Zircoa will quickly and discreetly investigate such reports. (Zir. Mem. at 2, Ex. 4.) In support of its motion for summary judgment, Zircoa submits the affidavit of its plant manager, Jason Haffner, indicating that Zircoa did investigate plaintiff's allegations of harassment promptly after the

12

plaintiff reported them at the March 8, 2011 meeting at which plaintiff was informed she was being written up for insubordination. (Haffner Dec. ¶5.) Haffner states that the company investigated plaintiff's claims of harassment by individually interviewing everyone on plaintiff's shift. He states that none of plaintiff's fellow employees saw or heard of any kind of harassment or suspected that it was going on. In addition, Haffner states that in connection with the investigation, Ed Ulatowski forwarded him a copy of the text message (set out in the facts above) that plaintiff sent him on March 8th. The message lead him to believe plaintiff was trying to coerce Ulatowski into supporting a claim of harassment. Zircoa considered the text message to be further evidence that plaintiff's allegations of harassment were unsubstantiated.

Plaintiff does not dispute Haffner's assertion that Zircoa investigated her allegations of harassment, but she asserts in her opposition briefs (again relying on the affidavit she submits with her briefs) that she reported the harassment to Zircoa on "March 6, 2011." However, as Zircoa points out, plaintiff's statement in her affidavit that she reported harassment on March 6th contradicts her clear, prior deposition testimony that the first time she reported harassment by Liotta was at the March 8, 2011 meeting. (Zir. Rep at 2-3; Pltf. Dep. at 90.) Plaintiff cannot create a factual issue as to when she first reported harassment "by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Plaintiff's deposition testimony demonstrates that she reported harassment by Liotta for the first time on March 8, 2011. In addition, the undisputed evidence shows that Zircoa investigated plaintiff's allegations shortly thereafter.

Plaintiff does not point to evidence on summary judgment contradicting or disputing

13

Zircoa's evidence that it investigated plaintiff's allegations promptly after they were made on March 8, 2011.  In addition, plaintiff does not argue or demonstrate in her opposition briefs that Zircoa otherwise breached a contractual provision in the CBA.[4]

Accordingly, defendants' motions for summary judgment as to Count I are granted.  Plaintiff has failed to meet her burden of coming forward with evidence from which a reasonable jury could conclude the union's conduct regarding her termination was discriminatory, arbitrary or in bad faith or that Zircoa breached the CBA.

*Count II- Retaliation*

In order to prove a *prima facie* case of retaliation, a plaintiff must show that:  (1) she engaged in protected activity; (2) her employer had knowledge of the protected activity; (3) the employer thereafter took an adverse employment action against the plaintiff; and (4) a causal connection exists between the plaintiff's protected conduct and the adverse employment action.  *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002).[5]  There can be no

---

[4] Zircoa also argued in its motion for summary judgment that plaintiff could not make out a claim for sexual harassment under Title VII as a matter of law, arguing that the alleged instances of harassment by Liotta that plaintiff testified to were insufficient as a matter of law to demonstrate the kind of severe and pervasive harassment necessary to find a sexually hostile work environment.  (Zir. Mem. at 18.)  Plaintiff does not counter Zircoa's arguments in this regard in her opposition briefs, and plaintiff does not demonstrate that the facts are legally sufficient to establish a hostile work environment.  Rather, plaintiff merely states in her opposition brief she was "sexually harassed." Therefore, to the extent plaintiff's claim for breach of the CBA is premised on a theory that plaintiff was sexually harassed, plaintiff has failed to come forward with evidence sufficient to withstand summary judgment on this theory as well.

[5] These requirements apply whether plaintiff's retaliation claim is brought under Title VII or Ohio law.  *See, e.g., Knepper v. Ohio State Univ.*, 10AP-1155, 2011 WL 5873375, at * 7 (Ohio App. 2011) (listing the same elements stated above to establish a *prima facie* case of retaliation under Ohio Rev. Code 4112.02(l)).

14

retaliation where the decision-maker had no knowledge of the protected activity. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551-52 (6th Cir. 2002). *See also Fenton v. HiSAN , Inc.,* 174 F.3d 827 (6th Cir. 1999) (affirming summary judgment for defendant when the plaintiff was unable to demonstrate that individuals taking the adverse employment action knew of the protected activity).

Zircoa moves for summary judgment on plaintiff's retaliation claim against it because the undisputed evidence shows that plaintiff did not report any harassment by Liotta to Zircoa until March 8, 2011, when plaintiff had already been called into Zircoa's office for work discipline. Thus, Zircoa contends plaintiff cannot meet either the second or fourth element of a *prima facie* case.

Plaintiff does not demonstrate in her opposition that she engaged in any protected activity prior to the March 8, 2011 meeting in which she was informed that she was being written up for insubordination. The only evidence plaintiff cites regarding her retaliation claim is her affidavit stating that she complained to Zircoa about harassment on March 6, 2011. Without citing to any other specific evidence in the record, plaintiff simply states: "Clearly Defendant had notice of Plaintiff's participation in protected activity." (Pltf. Opp. at 5-6.)

As discussed above in connection with count I, plaintiff cannot demonstrate that she complained to Zircoa of harassment on March 6, 2011, because the affidavit in which plaintiff states that she complained of harassment on March 6th contradicts her prior deposition testimony that she first reported her allegations of harassment on March 8, 2011. In addition, plaintiff has failed to point to any other evidence on summary judgment demonstrating that she reported harassment to Zircoa or otherwise engaged in protected activity outside of the report she made at

the March 8, 2011 disciplinary meeting.

Zircoa's motion for summary judgment on Count II is granted. Plaintiff has failed to meet her burden of coming forward with evidence from which a reasonable jury could find that Zircoa knew of plaintiff's allegations of harassment against Liotta, and took the disciplinary actions it did against her, in retaliation for a report of harassment or protected activity rather than because of plaintiff's own work conduct.

*Count III- Gender Discrimination*

Plaintiff's third count alleging gender discrimination is brought under Ohio law. The elements and burden of proof in gender discrimination claims under Ohio law parallel the federal analysis. *Johnson v. Ohio Cas. Ins. Co.*, 1: 05 CV 742, 2008 WL 2387270, at *7 (S.D. Ohio June 11, 2008). To demonstrate a *prima facie* case of discrimination, a plaintiff must show that she: (1) is a member of a protected class; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was replaced by or treated differently than a similarly-situated non-protected employee. *Wright v. Murray Guard, Inc*., 455 F.3d 702, 707 (6th Cir. 2006). If the plaintiff meets this burden of demonstrating a *prima facie* case, the burden shifts to the defendant to put forth a "legitimate, nondiscriminatory reason" for the complained of adverse treatment. *Id.* If the defendant meets this burden, the burden shifts back to the plaintiff who must then show that the defendant's legitimate nondiscriminatory reason was merely a pretext for discrimination. Throughout this burden-shifting approach, the plaintiff bears the ultimate burden of proving defendant's intent to discriminate by a preponderance of the evidence. *Id.* at 706.

Zircoa contends that plaintiff fails to make out a triable claim. First, it argues that

16

plaintiff cannot establish the fourth element of a *prima facie* case, requiring plaintiff to show that she was treated differently than a similarly situated employee.  Zircoa points out that plaintiff herself testified that she was replaced by Alyson Jagoe, a female employee who falls within plaintiff's alleged protected class.  (Zir. Mem. at 12; Pltf. Dep. at 70.)  Furthermore, Zircoa asserts that it had a legitimate non-discriminatory reason for disciplining plaintiff and terminating her employment, namely, plaintiff's violation of her return to work agreement (put in place because of plaintiff's history of attendance and other work-related problems) by acting openly insubordinately toward her supervisor, Liotta.

Plaintiff argues in her opposition brief that she has "provided enough evidence to meet the prima facie case" and to refute Zircoa's "alleged legitimate business reasons" for discharging her, once again relying exclusively on her affidavit.  (Pltf. Opp. to Zir. Mot. at 4-5.)  Plaintiff's affidavit is insufficient to demonstrate either a *prima facie* case of gender discrimination or a genuine issue of pretext.  Plaintiff states in her affidavit that her "position was filled by male employees."  This statement is insufficient to create a genuine issue on summary judgment because it directly contradicts plaintiff's prior deposition testimony that she was replaced by Jagoe, a female.  (Zir. Rep. at 5; Pltf. Dep. at 70.)  Further, plaintiff has failed to point to any other evidence indicating that she was replaced by or treated differently than a similarly situated employee outside of her protected class.  Accordingly, plaintiff has failed to demonstrate a *prima facie* case.

Plaintiff likewise has failed to point to evidence on summary judgment sufficient to support a plausible finding of pretext.  Citing her affidavit generally, plaintiff states in her opposition brief that Zircoa's alleged reasons for discharging her "are not supported by the

17

evidence." (Pltf. Opp. at 5.) But plaintiff does not cite to any facts in the record supporting this statement. Significantly, plaintiff does not deny that she did not follow Liotta's instruction or that she had a dispute with him after he instructed her to do as she was told. She also does not dispute that she was summoned to Zircoa's office the following evening when she reported to work and was informed that she was being written up for insubordination. Plaintiff generally denies that she was insubordinate and asserts that insubordination and attendance were not the real reasons for her suspension and termination; however, plaintiff has failed to point to evidence in the record from which a reasonable jury could draw this conclusion.

Accordingly, the Court grants defendants summary judgment on Count III.

**Conclusion**

For all of the reasons stated above, the plaintiff has failed to meet her burden of coming forward with evidence from which a reasonable jury could find in plaintiff's favor on any of her alleged claims. Accordingly, defendants' motions for summary judgment on plaintiff's claims are granted.[6]

        IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
    PATRICIA A. GAUGHAN
    United States District Judge

Dated: 3/4/13

---

[6] Zircoa has also filed a motion to strike plaintiff's entire affidavit on the ground that "the affidavit is an improper attempt to create a genuine issue of fact in contradiction of Plaintiff's deposition testimony." (Doc. 35.) The Court grants this motion to the extent discussed in the opinion above that the affidavit contradicts plaintiff's prior deposition testimony.